```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE MARCUS CORPORATION

                                                          MEMORANDUM OPINION
                                                              AND ORDER

                    Plaintiff,                            04 CV 05432 (GBD)

          -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

                    Defendants.
------------------------------------------------------------x
```

GEORGE B. DANIELS, District Judge:

Plaintiff, a merchant who accepts defendants' payment card products, brought suit alleging antitrust violations of the Sherman Act. Defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), contending that plaintiff's claims are barred by the relevant statute of limitations.[1] For the reasons stated below, defendants' motion is denied.

Plaintiff Marcus Corporation ("Marcus") is a Wisconsin corporation that owns and operates movie theaters and hotels in thirty-two states. Marcus, which has accepted American Express payment card products as a merchant consumer ("merchant") for more than four years prior to filing suit,[2] brings suit under section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and section 16 of the Clayton Act, 15 U.S.C. § 26.[3]

---

[1] Section 4B of the Clayton Act, 15 U.S.C. § 15b.
[2] Marcus accepted American Express personal and corporate charge cards, as well as the Optima credit card, first issued in 1986, and an unspecified number of other American Express-issued credit cards. Marcus denies having accepted the American Express Blue credit card. (Plaintiff's Statement of Material Facts ¶ 1). For explanation of relevant distinctions among payment cards, see discussion infra p.2.
[3] The Clayton Act permits private litigants like Marcus to bring suit under the Sherman Antitrust Act.

Visa, MasterCard, American Express, and Discover collectively control the bulk of the payment card industry.[4] Visa and MasterCard operate as joint ventures with the banks that issue their payment cards to consumers. American Express, by contrast, has until recently issued payment cards directly to the consumer, without partnering with banks. When a consumer presents a card to a merchant, the merchant submits a request for payment to American Express or, in the case of Visa and MasterCard, to the card-issuing bank. Both the Visa/MasterCard and American Express models derive revenue by withholding a "merchant discount fee" from each transaction submitted. Marcus alleges that American Express charges a merchant discount fee of approximately 3%, considerably higher than the 1.8% that merchants pay to Visa or MasterCard. (Compl. ¶ 20, 21). Marcus contends that the merchant discount fee levied by American Express is supracompetitive, and can be sustained only by the unlawful tying of American Express charge card[5] and credit card services in violation of § 1 of the Sherman Act. (Compl. ¶ 2).[6]

Marcus alleges that American Express unlawfully ties its charge card and credit card services through an Honor All Cards policy ("HAC") included in its merchant contract. Merchants who choose to accept the charge card must agree to accept *all* American Express

---

[4] The payment card industry has been extensively discussed in recent litigation. Undisputed industry facts cited in this order are derived from United States v. Visa U.S.A., Inc., 163 F.Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), *cert. denied*, 125 S. Ct. 45 (2004).

[5] A charge card requires its holder to pay the full outstanding balance at the end of a standard billing cycle. A credit card, by contrast, allows the cardholder to pay the amount owing at the close of a billing cycle, subject to interest charges. In plain terms, the credit card is a means of financing purchases, the charge card a method of payment.

[6] A typical tying arrangement is "an agreement by a party to sell one (tying) product but only on the condition that the buyer also purchases a different (or tied) product." Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 461-62 (1992) (quoting Northern Pac. Ry. V. United States, 356 U.S. 1, 5-6 (1958)). The Supreme Court identifies the "essential characteristic" of an unlawful tying arrangement as "the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." Jefferson Parish v. Hyde, 466 U.S. 2, 12 (1984).

cards.[7] Marcus concedes that it has accepted American Express personal and corporate charge cards for more than four years prior to the filing of the first class action complaint challenging the alleged tying arrangement, and further admits to having accepted an unidentified number of American Express-issued credit cards in that period. (Plaintiff's Statement of Material Facts ¶ 1). Marcus does not allege that Honor All Card policies are per se illegal, but contends that American Express exploited its market power in the charge card market to build a credit card presence through its HAC policy.

This litigation is set against the backdrop of an eight-year Department of Justice lawsuit against Visa and MasterCard. In 2003, the Second Circuit affirmed a ruling that Visa and MasterCard violated antitrust statutes by colluding to require that their credit card-issuing bank partners refuse to issue American Express products; this collusion had effectively barred American Express from the credit card market.[8] At the time, Visa and MasterCard collectively controlled upwards of 90% of the credit card market. As a result of the Second Circuit's decision, American Express has made major inroads into the bank-issued credit card market while maintaining its position as the leading issuer of corporate and consumer charge cards in the United States. Since the resolution of the DOJ litigation, American Express has negotiated card-issuing agreements with two of the nation's largest card-issuing banks. Plaintiff contends that in enforcing its Honor All Cards policy to require merchants to accept bank-issued credit cards at a

---

[7] "*American Express Card* or *Card* shall mean any card or other account access device issued by American Express Travel Related Services Company, Inc. or its subsidiaries or affiliates or its or their licensees bearing the American Express name or an American Express trademark, service mark or logo." 1999 American Express Card Acceptance Agreement. (Plaintiff's Exhibit 2, Declaration of Noah Shube).
[8] United States v. Visa U.S.A., Inc., 344 F.3d 229 (2d Cir. 2003), *cert. denied*, 125 S. Ct. 45 (2004). In fact, American Express made several attempts to enter the credit card market through subsidiaries prior to the DOJ litigation, but, as the District Court found in Visa U.S.A., American Express "cannot alone duplicate the strength and breadth of issuance and acceptance achieved by [Visa and MasterCard] through issuance by thousands of different [banks]." United States v. Visa U.S.A., Inc., 163 F.Supp. 2d at 389.

supracompetitive merchant discount rate, American Express has committed antitrust violations causing injury to plaintiff in the form of overcharges on each credit card transaction. Specifically, plaintiff alleges that American Express:

> Launched entire new credit and debit card brands, such as Blue, the MBNA-issued Amex-branded credit card, the Amex-Fidelity debit card and others; [s]ubjected most of these new products to the Honor All Cards rule; [s]et the merchant discount rate on these new products at supra-competitive levels that exceed market rates by 40% or more; [i]ssued tens of millions of its new credit cards to consumers, and processed hundreds of millions of transactions, resulting in billions of dollars in new and accumulated overcharge being inflicted upon merchants; [i]nstituted a program whereby it accretes market share in the tied product market by kicking back to cardholders a portion of the overcharge it extracts from merchants through the tying arrangement; [s]olicited the nation's largest banks to allocate their unparalleled resources to the distribution of these new, tied credit cards; [a]nnounced agreements with two of the three largest credit card issuing banks in the U.S., thereby forcing MasterCard and Visa to either price their own services to merchants at inefficiently high levels, or risk losing all of the banks, and the U.S. credit card market, to American Express.

(Plaintiff's Memo at 18-19).

In reviewing defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Patel v. Searles, 305 F.3d 130, 134-35 (2d Cir. 2002). A court determining the sufficiency of a plaintiff's claim must limit its inquiry to the facts stated in the complaint; the complaint includes any written instrument attached as an exhibit and any statements or documents incorporated by reference into the complaint. Paulemon v. Tobin, 30 F.3d 307, 308-309 (2d Cir. 1994).

Defendants move to dismiss plaintiff's claims as time-barred pursuant to section 4B of the Clayton Act, which requires that private antitrust litigants bring claims within "four years after the cause of action accrued." 15 U.S.C.A. § 15b. Guiding this court's inquiry is the

Supreme Court's admonition that "[a]ny period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463 (1975). Plaintiff argues that under the traditional Clayton Act limitations standard, known as the "injury accrual rule," its claims remain viable, as the injuries alleged occurred within the four-year period prior to filing suit.[9] Defendant contends that any injury plaintiff allegedly suffered would have accrued years before the limitations period,[10] since Marcus signed its contract with American Express, including the HAC provision, well before the four-year limitations period preceding the filing of this suit.[11]

Generally, "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." Zenith v. Hazeltine, 401 U.S. 321, 338 (1971). Thus, two events must occur in order to begin the running of the limitations period: the act and the injury. Id. at 339 (identifying the accrual of a cause of action as the point at which "a plaintiff feels the adverse impact of an antitrust [violation]").

After the Second Circuit's decision in Visa U.S.A., American Express contracted with MBNA and Citicorp, "two of the nation's three largest credit card issuing banks," to issue American Express credit cards. (Plaintiff's Memo at 5). Marcus alleges that these contracts have given rise to a "radical realignment" of the U.S. credit card market, (Plaintiff's Memo at 3),

---

[9] The limitations period began four years prior to the filing of the first class action complaint challenging the Honor All Cards policy, Italian Colors Restaurant v. American Express Co., No C-03-3719 (N.D. Cal.), filed August 8, 2003. (Plaintiff's Statement of Material Facts ¶ 1); (Defendant's Memo at 8).

[10] Plaintiff also argues in the alternative that its claims are not time barred pursuant to the continuing violation exception. Having found that plaintiff filed suit within four years of the accrual of Marcus's alleged injury, however, the Court need not address that argument.

[11] The precise date of the initial contract does not appear in materials submitted to the court, but plaintiff concedes that the contract was formed prior to the limitations period, supra p.2.

resulting in injuries to plaintiff in the form of overcharges that could not have occurred prior to the resolution of Visa U.S.A. Defendants suggest that, even were the alleged tying arrangement violative of antitrust laws, Marcus should have brought its complaint within four years of accepting its first American Express credit card pursuant to the HAC policy. This, defendants argue, occurred in 1986 with the release and subsequent acceptance by Marcus of the American Express Optima credit card. Defendants argue that any injury plaintiff currently alleges would necessarily have accrued upon the issuance of the Optima card. Plaintiff asserts, however, that Optima was issued through a subsidiary of American Express, not a major card-issuing bank, and performed poorly in the credit card market. (Compl. ¶ 29). Thus, plaintiff contends that the overcharges it sustained as a result of American Express's post-Visa U.S.A. imposition of bank-issued credit cards at supracompetitive merchant discount rates are different in kind and degree than any which might have occurred during the Optima period.

In Berkey Photo, the Second Circuit found that, in a limitations period-based challenge to a suit brought under § 2 of the Sherman Act, injuries to purchasers do not accrue until a monopolist "actually exercises its illicit power to extract an excessive price," otherwise "the purchaser has no cause of action." Berkey Photo, Inc. v. Eastman Kodak, 603 F.2d 263, 295 (2d Cir. 1979) (finding that "[u]ntoward consequences would follow were we to hold that the anticompetitive conduct itself triggered the running of the limitations period."). The overcharges that Marcus alleges it suffered pursuant to the tying arrangement did not accrue until American Express exercised this allegedly "illicit power" to compel acceptance of millions of bank-issued credit cards, a field in which it had been allegedly inactive for the entirety of its contract with Marcus. See Higgins v. NYSE, 942 F.2d 829, 832 (2d Cir. 1991) (concluding that plaintiff's

6

claim was barred when his last alleged injury occurred more than four years prior to filing suit); see also Telectronics Proprietary, Ltd. V. Medtronic, Inc., 687 F. Supp 832, 843 (S.D.N.Y. 1988) (holding that antitrust injury accrued not when defendants unlawfully purchased disputed patents, but when the patents were asserted against plaintiffs). Accepting the facts alleged in the complaint as true for the purpose of this motion, and construing all inferences in favor of plaintiff, Marcus has alleged that, after the resolution of Visa U.S.A., American Express committed an anticompetitive act resulting in injury within the limitations period. Defendants' motion is therefore denied.

Dated: July 1, 2005
    New York, New York

SO ORDERED:

*[signature]*
GEORGE B. DANIELS
United States District Judge